UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SHELDY SMITH and
MARY ROWAN, as full conservator,

            Plaintiffs,

v.

DEWAYNE JONES,
CITY OF DETROIT, and
STACEY TAYLOR,

            Defendants.
_____/

Case No. 2:19-cv-10103
District Judge Victoria A. Roberts
Magistrate Judge Anthony P. Patti

**OPINION AND ORDER DENYING DEFENDANT DEWAYNE JONES'S MOTION FOR PARTIAL RECONSIDERATION (ECF No. 69)**

Defendant Dewayne Jones filed a motion to compel production of the entire guardianship file of Sheldy Smith, as well as the 2009-2019 tax returns of Mary Rowan, Smith's guardian and conservator. (ECF No. 48.) On August 20, 2020, the Court granted the motion as to the guardianship file, but denied it as to the tax returns. (ECF No. 67.)

Defendant Jones has now moved for partial reconsideration, again seeking Rowan's tax records. Jones contends that these records will support his defense by demonstrating that Rowan had too many wards to handle effectively at the time of this incident, did not keep a proper eye on Ms. Smith, and, accordingly, caused or contributed to these unfortunate events through her own negligence. Defendant

1

Jones also aims to undercut Rowan's credibility as to the number of wards she handled. He believes that Rowan's tax returns will allow for a more precise calculation as to the exact number of wards Rowan was overseeing at the time of this incident, based upon her reported guardianship income.

The Court gave its multiple reasons for denying Defendant's request for the tax returns from the bench at the August 18, 2020 hearing, all of which were incorporated by reference in the Court's subsequent order and based on the factors set forth in Fed. R. Civ. P. 26(b)(1), which affords the Court broad discretion in setting the boundaries of permissible discovery. *Ghandi v. Police Dep't of Detroit*, 747 F.2d 338, 354 (6th Cir.1984). (ECF No. 67, PageID.920-921.) The Court noted that: (1) the request for the guardian's tax information was "highly invasive;" (2) the request was based upon speculative information about how many wards the guardian has and whether that information could even be extrapolated from the tax returns; (3) Rowan had already testified under oath as to how many wards were under her care; (4) information about how many court-appointed guardianships Rowan oversees should be information that is ascertainable from the Wayne County Probate Court and equally assessable to both sides of this litigation; (5) Rowan is not the real party in interest in this case, rather, she is the nominal party on behalf of Ms. Smith; and, (6) the information used to justify this request was based upon social media and tenuous sources critical of Rowan. Additionally,

the Court looked at the strength of the defense Jones hopes to prove through this tax information and noted that the theory upon which Jones bases this defense – namely, that if Rowan had properly cared for her ward, Ms. Smith would not have suffered a criminal assault and battery at the hands of a Detroit police officer (as has been found by a jury) – is too attenuated and speculative to justify such broad discovery. The Court recognizes that it is for another day – likely through motions *in limine* or dispositive motions – to decide whether this defense will be permitted at all; yet, in establishing the appropriate scope of discovery, the Court notes that acts of criminal assault and/or battery are likely to interrupt the chain of causation as superseding causes. *See Superseding Cause*, Black's Law Dictionary 213 (7th Ed. 1999) ("An intervening act that the law considers sufficient to override the cause for which the original tortfeasor was responsible, thereby exonerating that tortfeasor from liability.") Because of that likelihood, and the speculative nature of the argument that Rowan could somehow have prevented a mental breakdown by her ward, and in turn have foreseen and prevented an unlawful assault and battery on a mentally unstable person by a police officer in a hospital emergency room, the Court emphasized the need to keep discovery from going down "rabbit holes" and to keep it focused on what is truly needed to prepare for trial. In other words, even if Rowan may have been a cause-in-fact of her ward's injury, she is not likely to have been its *proximate* cause in light of Jones's intervening conduct, video of

which was filed in this case on July 21, 2020 (*see* ECF No. 61) and has been viewed by the Court.[1]

Defendant challenges several points in the Court's reasoning. Defendant suggests that Rowan's testimony as to the number of wards she oversaw was inaccurate and that her tax information would afford an opportunity to attack her credibility. However, the Court has reviewed Ms. Rowan's testimony. It is clear that she was merely asked to "estimate" how many wards she currently oversees and how many she was overseeing the time of this incident in 2018. And it is clear that her answers were, in fact, just estimates, such as "[a]bout" 150 and "[m]aybe 200." (ECF No. 71, PageId.1010 [Dep. Trans. at 13].) In fact, when directly asked how many wards she had at the time of her appointment as guardian for Ms. Smith, she testified, "I don't remember." (ECF No. 71, PageID.1019 [Dep. Trans. at 46].) Establishing the actual number will do little to impede her credibility, when her answer was so noncommittal to begin with. Furthermore, between the information Defendant Jones already has from other sources – which he has generously

---

[1] Although the Court incorporated all of the reasons given from the bench into its subsequent, written order, the order highlighted some, but not all of these reasons, specifically stating that: "Plaintiff need not produce Mary Rowan's tax returns from 2009 through 2019, as: (1) they are only tangentially related to these proceedings, if at all; (2) they are being sought for information which can be obtained by Defendants from other, less invasive sources; (3) the request is based on information gleaned from tenuous social media reports; (4) and, the requested discovery is harassing and disproportionate to the needs of this case." (ECF No. 67, PageID.920-921.)

displayed to the Court both here and in the underlying motion – and the Rowan testimony, Jones can already establish that Rowan was overseeing hundreds of wards at a time. Even without knowing the exact number, Jones has more than enough ammunition to make the argument, if the Court allows it, that Rowan was overstretched and could not have given the level of attention required by Ms. Smith. There is no need to expand discovery to the tax returns of a nominal party just to gild the lily on this point.

Defendant also argues that the Court was mistaken as to the tenuous nature of the sources used to justify the request for tax returns. The Court was not mistaken; they are attached to the original motion and were reviewed by the Court before the hearing. The Court acknowledges that another of Rowan's wards may have sought her replacement, as appears in the "Official declaration of Kristina M. Brockington" to the Wayne County Probate Court, which is noticeably unsigned and unsworn, but which Defendant Jones attached as Exhibit F. (ECF. No. 48-2, PageID.709-713.) The Court is also aware that a publication called *Voice of Detroit*, which apparently accepts articles from people who wish to submit them to diane_bukowski@hotmail.com, ran a scathing article about Rowan with the sensational title, "Vulture Guardian Mary Rowan Kidnaps Again…." (ECF No. 48-2, PageID.691-704 [Ex. D]), and that somebody has put up a website apparently called www.change.org/p/michigan-ag-dana-nessel-stop-the-horrific-abuse, which

contains a posting called "Why you are signing: the horrific abuse of vulnerable adults by attorney Mary Rowan[,]" (ECF No. 48-2, PageID.705-707 [Ex. E]).[2] The Court is also aware that there is an effort underway in Wayne County Probate Court to replace Rowan as Smith's guardian, which is the subject of a pending motion to intervene in the instant matter. (ECF No. 65.) But this Court asked Jones's attorney point-blank at the hearing if she had any *evidence*, other than wild accusations in alleged news reports, that Rowan actually lied about the number of her wards. Counsel answered, "Again, as I sit here today, no, other than the various reports throughout social media on the web."[3]

Additionally, Defendant argues that the Court was mistaken in its belief that the information could be obtained through less intrusive means. Defendant represents that he has been unable to obtain that information from the probate court. (ECF No. 69, PageID.929.) Without detailing what efforts he made to

---

[2] When Defendant Jones filed his motion (ECF No. 48), it was accompanied by: (a) a 2-page index of exhibits, which describes Exhibits A-I (ECF No. 48-1); and, (b) a single, 49-page attachment of exhibits (ECF No. 48-2). This Court's Electronic Filing Policies and Procedures provide that "[e]ach exhibit must . . . be filed and identified as a *separate* attachment to the paper and must be labeled in the electronic record with an exhibit identifier and brief narrative description." R19(b)(3) (emphasis added). Future submissions must comply with this rule.

[3] Notwithstanding these criticisms on the Internet, the characterization of Rowan as having been appointed guardian over hundreds of wards (at least at this point in time) only underscores the *impression* that Wayne County Probate Court – our sister court just down the street – has great confidence in attorney Rowan's abilities.

obtain this information, Jones suggests that there is no way to do so, because it cannot be retrieved online and because the probate court is not physically accessible during the Covid-19 pandemic, although he acknowledges that he "could arguably go to the Court and search the court records manually" once the court is open. (*Id.*, PageID.939.) However, this Court finds it hard to believe that the information is inaccessible, even if the ability to obtain it is temporarily interrupted or would require imaginative or even great effort. The probate court is clearly the best source for ascertaining the number of times Rowan was appointed as a guardian and when those appointments occurred, even without revealing the wards' names. The probate court is a public functionary. It does not hide such information, and this statistical information is undoubtedly equally available to anyone who utilizes the proper means to obtain it. Even so, for the reasons stated above, the scope of discovery in this case does not justify this Court using formal means to force the production of Rowan's tax records, even if Jones wishes to expend the time and effort via other sources to figure out the exact number of wards. Indeed, "th[e] desire to allow broad discovery is not without limits and the trial court is given wide discretion in balancing the needs and rights of both plaintiff and defendant." *Scales v. J.C. Bradford & Co.,* 925 F.2d 901, 906 (6th Cir. 1991). Taking a step back, the forest needs to be seen through the trees in this case.

"Generally, and without restricting the Court's discretion, the Court will not grant motions for rehearing or reconsideration that merely present the same issues ruled upon by the Court, either expressly or by reasonable implication. The movant must not only demonstrate a palpable defect by which the Court and the parties and other persons entitled to be heard on the motion have been misled but also show that correcting the defect will result in a different disposition of the case." E.D. Mich. LR 7.1(h)(3). Defendant having failed to demonstrate a palpable defect in the Court's original ruling, the motion for reconsideration (ECF No. 69) is **DENIED**.

Dated: September 25, 2020

_____
Anthony P. Patti
UNITED STATES MAGISTRATE JUDGE